UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
Virginia T. Bautz, on behalf of herself
and all others similarly situated,

                                               Civil Action No: 2:16-cv-00768-JFB-SIL

                    Plaintiffs,

        v.

ARS National Services, Inc.,

                    Defendants.
------------------------------------------------------X

**PLAINTIFF'S RESPONDING BRIEF**
**<u>OPPOSING DEFENDANT'S MOTION FOR DISMISSAL</u>**

Law Offices of Gus Michael Farinella, PC
110 Jericho Turnpike – Suite 100
Floral Park, NY 11001
*Attorney for Plaintiffs*

*On the brief:*
Ryan Gentile, Esq.

TABLE OF CONTENTS……………………………………………………..……..……..2

TABLE OF AUTHORITIES……………………………………………………..…..…3

INTRODUCTION………………………………………………………………..…6

LEGAL ARGUMENTS………………………………………………………...8

      POINT I: LEGAL STANDARD FOR A MOTION TO DISMISS PURSUANT TO
      RULE 12(b)(1)………………………………………………………..…..8

      POINT II: THE EFFECT OF SPOKEO ON THE ISSUE OF STANDING…………..…8

      POINT III: CONGRESSIONAL PURPOSE BEHIND THE FDCPA…………………..11

      POINT IV: PLAINTIFF'S INJURY IS SUFFICIENTLY PARTICULARIZED……......12

      POINT V: PLAINTIFF'S INJURY IS SUFFICIENTLY CONCERETE………………13

            A.  Introduction…………………………………………………………..…..13

            B.  Supreme Court precedent – including Spokeo itself – recognizes informational
               injury as a concrete injury……………………………………………..13

            C.  Misrepresentations by debt collectors are among the real-world harms that
               Congress sought to curb in enacting the FDCPA……………………………..15

            D.  The Plaintiff's claims have long been actionable in the Anglo-American
               tradition………………………………………………………………18

            E.  This case also illustrates the risk of tangible harm from ARS's
               misrepresentations, harm that itself supports standing here……………………19

      POINT VI: PRE AND POST-SPOKEO CASE LAW DEMONSTRATES THAT
      THE PLAINTIFF HAS STANDING IN THIS MATTER………………………………23

            A.  Analogous pre-Spokeo case law from this District and Circuit held that
               Plaintiffs in identical cases had standing under Article III………………….....23

            B.  Courts Post-Spokeo have held that individuals in FDCPA cases have standing
               to bring their cases…………………………………………………….....24

      POINT VII: PLAINTIFF'S CLAIM IS SUBSTANTIVE NOT PROCEDURAL………29

CONCLUSION……………………………………………………………………..30

# TABLE OF AUTHORITIES

## CASES

Ali v. NYC DOT, 2014 U.S. Dist. LEXIS 158331 (E.D.N.Y. Nov. 4, 2014)……………….….8

Barnett v. Countrywide Bank, FSB, 60 F. Supp. 3d 379 (E.D.N.Y. 2014)………………....8

Bernal v. NRA Grp., LLC, No. 16 C 1904, 2016 WL 4530321 (N.D. Ill. Aug. 30, 2016)…....27

Church v. Accretive Health, Case No. 15-15708, 2016 WL 3611543
(11th Cir. July 6, 2016)………………………………………………………………26, 27, 29, 30

Dickens v. GC Servs. Ltd. P'ship, No. 16-cv-00803, 2016 WL 3917530
(M.D. Fla. July 20, 2016)……………………………………………………………………...27

Dittig v. Elevate Recoveries, LLC, No. 16CV1155, 2016 WL 4447818
(W.D. Pa. Aug. 24, 2016)……………………………………………………………………...27

Federal Election Commission v. Akins 524 U.S. 11 (1998)……………………………..11, 14, 15

Good v. Nationwide Credit, Inc., 55 F. Supp 3d 742 (E.D. Pa. Oct, 24, 2014)……………….…7

Hall v. Global Credit & Collection Corporation, 2016 WL 4441868
(M.D. Fla. Aug. 23, 2016)…………………………………………………………………….27

Havens Realty Corp. v. Coleman, 455 U. S. 363 (1982)…………………….....10, 16, 17, 19, 26, 27

Hayes v. Convergent Healthcare Recoveries, Inc., 2016 WL 5867818
(CD Illinois, October 7, 2016)……………………………………………………..26, 27, 30

Irvine v. I.C. Sys., Inc., 2016 WL 4196812 (D. Co. July 29, 2016)…………………….25, 27, 30

Jones v. Advanced Bureau of Collections LLP, No. 5:15-CV-16(MTT), 2016 WL 4499456
(M.D. Ga. Aug. 26, 2016)……………………………………………………………….….27

Kaff v. Nationwide Credit, Inc., 1:13-cv-05413 (SLT), 2015 WL 12660327
(E.D.N.Y. Mar. 31, 2015)……………………………………………………..20, 21, 22, 23, 24

Lane v. Bayview Loan Servicing, LLC, No. 15-cv-10446, 2016 WL 3671467
(N.D. Ill. July 11, 2016)……………………………………………………………………27

Linehan v. Allianceone Receivables Management, Inc., Case No. C15-1012-JCC, 2016 WL
4765839 (W.D. Wash. Sept. 13, 2016)…………………………………………………....24. 28

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)………………………………………...9, 19

McCamis v. Servis One, Inc., 2016 WL 4063403 (M.D. Fla. July 29, 2016).......................28

Macy v. Gc Servs., Civil Action No. 3:15-cv-819-DJH, 2016 U.S. Dist. LEXIS 134421 (W.D. KY 2016).................................................................................................28

Massachusetts v. EPA, 549 U.S. 497 (2007)......................................................9, 10

Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292 (2d Cir. 2003)..................23, 34

Okyere v. Palisades Collection, LLC, 961 F. Supp. 2d 508 (S.D.N.Y. 2013).....................20

Prindle v. Carrington Mortgage Services, LLC, 2016 WL 4369424 (M.D. Florida, Jacksonville Division, August 16, 2016)...................................................15, 18, 19, 25, 27

Public Citizen v. U.S. Department of Justice, 491 U.S. 440 (1989).....................11, 14, 15

Quinn v. Specialized Loan Servicing, LLC, Case No. 1:16-cv-2021, 2016 WL 4264967 (N.D. Ill. Aug. 11, 2016)...............................................................................28

Sayles v. Advanced Recovery Sys., Inc., No. 3:14-CV-911-CWR-FKB, 2016 WL 4522822 (S.D. Miss. Aug. 26, 2016).............................................................................28

Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016)...........................................Passim

Velez v. Enhanced Recovery Company, LLC, 2016 WL 1730721 (E.D. Pa. May 2, 2016).......20

## STATUES

15 U.S.C. §1692.........................................................................................6

15 U.S.C. §1692(a).....................................................................................11

15 U.S.C. §1692(e)..................................................................................11, 15

15 U.S.C. §1692e......................................................................................Passim

15 U.S.C. §1692e(2)(A)...........................................................................12, 19

15 U.S.C. §1692e(10)..............................................................................12, 15

## RULES

Fed. R. Civ. P. 12(b)(1)................................................................................8

## RESTATEMENTS

Restatement (1st) of Torts §§ 525, 552 (1938)…………………………………………………...…18

Restatement (2d) of Torts § 552C & Cmt. a (1977)…………………………………………...…19

## <u>INTRODUCTION</u>

Plaintiff, Virginia T. Bautz, ("Plaintiff" or "Ms. Bautz") brought this putative class action lawsuit individually, and on behalf of a class, to obtain redress for the unlawful debt collection practices used by ARS National Services, Inc. ("ARS" or "Defendant"). Plaintiff alleged that ARS unlawfully engaged in the collection of consumer debts in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA").  On or about December 31, 2015 ARS mailed or caused to be mailed to the Plaintiff a collection letter (the "Letter") seeking to collect a debt. The Letter is attached as <u>Exhibit A</u> (Doc. No. 1-1) to the Complaint. (Cmplt., ¶18, 20, 21) The Letter states: "Right now we are offering to settle your account for the reduced amount of $467.15. That's a savings of $382.20." (Cmplt., ¶23) The Letter further states, "Department Stores National Bank will report forgiveness of debt as required by IRS regulations." (Cmplt., ¶24) (Hereinafter, Department Stores National Bank shall be referred to as "DSNB.") Plaintiff alleged in her complaint that the language in the Letter violated the FDCPA at 15 U.S.C. §1692e because it contained a false, deceptive and misleading representation. (Cmplt., ¶25) Plaintiff alleged that the language "Department Stores National Bank will report forgiveness of debt as required by IRS regulations" was false, deceptive and misleading by giving erroneous and incomplete tax information because in actual fact, and according to IRS regulations, DSNB would not report forgiveness of debt of only $382.20 (Cmplt., ¶¶39-41). Finally, the Plaintiff alleged materiality and risk of harm because "the least sophisticated consumer would likely be deceived into believing that there would be a tax consequence if she accepted Defendant's offer in the Letter", and that "such a belief would be false." (Cmplt., ¶45).

On August 31, 2016, this Court held, via oral ruling, that Defendant's Motion to Dismiss under Rule 12(b)(6) [Doc. No. 13] was denied in its entirety. Your Honor found that the Letter

contained a materially false, deceptive, and misleading representation in violation of 15 U.S.C.

§1692e. Specifically, Your Honor held:

> Although the Defendants argue that "as" as used in that statement is a permissive qualifier essentially the equivalent of "if" or "when" I do not believe that that would be the understanding of the least sophisticated consumer. In particular, I conclude that the combination of the term "will report" as well as the term "as required" reasonably communications to the least sophisticated consumer that any forgiveness of debt without any qualifications or conditions will be reported to the IRS because it is required by the IRS regulations…I certainly conclude that it is a reasonable interpretation of that language which could be understood by the least sophisticated consumer.
>
> I think when the term "will" is used "as required by law" its reasonably communicated, certainly to the least sophisticated consumer, that that's a mandatory thing that's going to happen as opposed to a conditional situation. See for example Good v. Nationwide Credit Inc. 55 F. Supp. 3d 742 at 748-749, Eastern District of Pennsylvania, 2014. Obviously given what I think the reasonable interpretation of that language is because there are numerous circumstances where debt forgiveness is not required to be reported to the IRS I conclude that the statement is deceptive and misleading to the least sophisticated consumer who could understood that statement at issue to require mandatory reporting of any debt forgiveness to the IRS. So the motion to dismiss on that ground is denied.

In addition, as discussed in more detail *infra*, Your Honor also found that the statement

"Department Stores National Bank will report forgiveness of debt as required by IRS

regulations" to be materially false, deceptive and misleading because it could impact a least

sophisticated consumers' decision making process and therefore carried a risk of harm.

Spurred by the Supreme Court's recent decision in Spokeo, Inc. v. Robins, 136 S. Ct.

1540 (May 16, 2016), Defendant now seeks to dismiss the Plaintiff's complaint on jurisdictional

grounds. But Defendant is mistaken both as to the Court's holding in Spokeo, and its reach. In

short, Spokeo does not affect this Court's continuing jurisdiction over this matter, as Plaintiff

maintains Article III standing to bring their class action claim against ARS under the FDCPA for

their violation of Plaintiff's – and each class member's – statutory rights under federal law.

**LEGAL ARGUMENTS**
**POINT I**
**LEGAL STANDARD FOR A MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)**

A motion to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1)

is the appropriate mechanism for challenging a plaintiff's constitutional standing to bring a

particular claim. Barnett v. Countrywide Bank, FSB, 60 F. Supp. 3d 379, 385 (E.D.N.Y. 2014)

(Spatt, J.) Although this is the Defendant's motion, the burden is nevertheless on the Plaintiff, as

the party seeking to invoke the Court's jurisdiction, to establish that they have standing, and by

extension, that subject matter jurisdiction exists. *See* Lujan v. Defenders of Wildlife, 504 U.S.

555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). In resolving this jurisdictional question, the

Court may refer to evidence outside the pleadings and weigh the evidence in the record. *See* Ali

v. NYC DOT, 2014 U.S. Dist. LEXIS 158331, at *3 (E.D.N.Y. Nov. 4, 2014).

**POINT II**
**THE EFFECT OF SPOKEO ON THE ISSUE OF STANDING**

In reality, the Supreme Court's decision in Spokeo does very little to change (or even

clarify) the law. The Supreme Court in Spokeo did not change the law of standing; it merely

reiterated certain fundamental principles and then remanded the case to the Ninth Circuit, whose

previous analysis was "incomplete" because it had "overlooked" concreteness. 136 S. Ct. at

1545. Significantly, the Court noted, "We take no position as to whether the Ninth Circuit's

ultimate conclusion – that Robins adequately alleged injury in fact – was correct." Id. at 1550.

The Supreme Court in Spokeo repeated its previous holdings that in order to establish

standing under Article III "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly

traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

favorable judicial decision. Id. at 1547. The Court in Spokeo focused on the first requirement

that of "injury in fact." This requirement has two components: the injury must be both (1)

particularized and (2) concrete. "For an injury to be 'particularized', it must affect the plaintiff in a personal and individual way." Id. at 1548 (quotation marks omitted). But particularization is only one half of the injury-in-fact inquiry. The injury must also be concrete—"that is, it must actually exist." Id.

What does this mean? To help answer that question, the Court in Spokeo distilled several "general principles" from its prior cases, without going beyond those cases. Id. at 1550. The first is that, although tangible injuries (like physical or economic harm) are "perhaps easier to recognize" as concrete injuries, **"intangible injuries can nevertheless be concrete," as can injuries based on a "risk of harm."** Id. at 1549–50 (**Emphasis added).** Second, "[i]n determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." Id. at 1549. So, if the "alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts"—or, put in fewer words, if "the common law permitted suit" in analogous circumstances—the plaintiff will have suffered a concrete injury that can be redressed by a federal court. Id.

But a plaintiff need not dig up a common-law analogue to establish a concrete injury, because Congress has the power (and is in fact "well positioned") "to identify intangible harms that meet minimum Article III requirements," even if those harms "were previously inadequate in law." Spokeo, 136 S. Ct. at 1549; see also Massachusetts v. EPA, 549 U.S. 497, 516 (2007) ("[Congressional] authorization is of critical importance to the standing inquiry: 'Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'"). Said differently, Congress can create "new rights of action that do not have clear analogs in our common-law tradition." Lujan v. Defenders of

Wildlife, 504 U.S. 555, 580 (1992) (Kennedy, J., concurring). "In exercising this power, however, Congress must at least identify the injury it seeks to vindicate and relate the injury to the class of persons entitled to bring the suit." Massachusetts, 549 U.S. at 516. If it does so, the plaintiff will be able to establish standing so long as they are part of that class of people.

Third, the Court in Spokeo emphasized that Congress can elevate even the violation of procedural rights to a concrete injury if they protect against an identified harm, and "a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." 136 S. Ct. at 1549. (emphasis in original) **Thus, where a plaintiff's allegations are aligned with the harm that Congress sought to curb, that plaintiff need not allege any <u>additional</u> harm beyond the one Congress identified**. The Supreme Court in Spokeo made clear that if Congress indicated that it sought to protect against a certain harm (like being subjected to false, deceptive or misleading representations in collection letters sent by debt collectors such as ARS), a plaintiff will have standing to sue if (like Ms. Bautz was) they are subjected to that harm.

Justice Thomas's concurrence in Spokeo provides even greater clarity on this point, explaining that when Congress creates new private rights – such as those afforded by the FDCPA to prevent deception and abuse by debt collectors – Article III standing exists once those private rights have been invaded:

> When Congress creates new private causes of action to vindicate private or public rights, these Article III principles circumscribe federal courts' power to adjudicate a suit alleging the violation of those new legal rights. **Congress can create new private rights and authorize private plaintiffs to sue based simply on the violation of those private rights**. See Warth v. Seldin, 422 U. S. 490, 500 (1975). A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right. See Havens Realty Corp. v. Coleman, 455 U. S. 363, 373–374 (1982) (recognizing standing for a violation of the Fair Housing Act); Tennessee Elec. Power Co. v. TVA, 306 U. S. 118, 137–138 (1939) (recognizing that standing can exist where "the right invaded is a legal right,—one of property, one arising out of contract, one protected against tortious invasion, or one founded on a statute which confers a privilege")

<u>Spokeo</u>, 136 S. Ct. at 1553. **(Emphasis Added)**

None of this is new. And the Court in <u>Spokeo</u> did not even apply these principles to the facts before it, choosing instead to remand the case to the Ninth Circuit, whose previous analysis was "incomplete" because it had "overlooked" concreteness. <u>Id</u>. at 1545. That said, the Supreme Court did provide a few examples of injuries that satisfy concreteness. The Court cited <u>Public Citizen v. U.S. Department of Justice</u>, which held that the plaintiff had standing to challenge DOJ's failure to provide access to information, the disclosure of which was allegedly required by the Federal Advisory Committee Act, because the inability to obtain such information "constitutes a sufficiently distinct injury to provide standing to sue." 491 U.S. 440, 449 (1989). The Court also cited <u>Federal Election Commission v. Akins</u> for a similar point, "confirming that a group of voters' 'inability to obtain information' that Congress had decided to make public is a sufficient injury in fact to satisfy Article III." <u>Spokeo</u>, 136 S. Ct. at 1550 (citing <u>Akins</u>, 524 U.S. 11, 20–25 (1998)). These cases illustrate that an informational injury—the personal denial of access to information required by statute—is a concrete injury under Article III.

## POINT III
## CONGRESSIONAL PURPOSE BEHIND THE FDCPA

To understand the nature of Plaintiff's injuries here, the natural starting point is the creation of the statutory rights that are alleged to have been violated. Congress enacted the FDCPA in 1977 in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. §1692(a). Congress expressly stated that the purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors" and "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. §1692(e).  To combat this

serious problem, the FDCPA contains several provisions aimed at preventing the transmission of inaccurate information, including a broad provision that generally prohibits false, deceptive, or misleading representations or means of all kinds. *See* 15 U.S.C. §1692e. A subsection of that provision specifically prohibits the false representation of "the character, amount, or legal status of any debt." §1692e(2)(A). Another subsection of that provision specifically prohibits "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." §1692e(10). <u>In enacting the FDCPA Congress identified, and sought to vindicate, the exact type of harm at issue in this case, i.e., false, deceptive, and misleading representations made in connection with the collection of a debt.</u> As the Court in <u>Spokeo</u> emphasized, Congress can elevate even the violation of procedural rights to a concrete injury if they protect against an identified harm, and "a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." <u>Id</u>. at 1549.

## POINT IV
## PLAINTIFF'S INJURY IS SUFFICIENTLY PARTICULARIZED

As an initial matter, the Plaintiff's injury is sufficiently particularized to establish standing. "For an injury to be 'particularized', it must affect the plaintiff in a personal and individual way." <u>Spokeo</u>, 136 S. Ct. at 1548. The injury alleged by the plaintiff in Spokeo—that the defendant "violated <u>his</u> statutory rights" by failing to ensure the accuracy of information that it reported about <u>him</u>—is an example of an injury that is sufficiently individualized to satisfy this requirement. <u>Id</u>. Therefore, in <u>Spokeo</u> the Court held that the Plaintiff's injury was sufficiently particularized and focused the main part of their decision on the concreteness of the injury issue.

There is no question that Ms. Bautz injury here is "particularized" – that it "affect[s] [her] in a personal and individual way." <u>Spokeo</u>, 136 S. Ct. at 1548. Like the plaintiff in Spokeo, Ms. Bautz has alleged in the Complaint that ARS "violated <u>her</u> statutory rights" by falsely implying –

in a collection letter sent to <u>her</u> that DSNB would report the forgiveness of debt offered in the Letter when in fact under no circumstances would DSNB report the forgiveness of debt offered in the Letter to the IRS. Therefore, it is respectfully submitted that, like the Plaintiff in <u>Spokeo</u>, Ms. Bautz's injury is sufficiently particularized.

**POINT V**
**PLAINTIFF'S INJURY IS SUFFICIENTLY CONCERETE**

**A.  Introduction.**

Applying the principals articulated in Point II above leads to one conclusion: Ms. Bautz has sufficiently established the concreteness of her injury to maintain standing. The false, deceptive and misleading representation that ARS subjected Ms. Bautz to is: (1) recognized as concrete by Supreme Court precedent, (2) among the evils that Congress sought to curb and protect consumers from when it enacted the FDCPA, (3) closely related to traditionally actionable harms that were cognizable under colonial-era American law, and (4) created a real risk of harm. Each reason, independently, per <u>Spokeo</u> is a basis for standing. In Ms. Bautz's situation, her claims against ARS satisfy all four of the above categories, even though only one is needed to establish standing. Furthermore, post-<u>Spokeo</u> case law analyzing FDCPA cases holds that persons suing for the same claim as Ms. Bautz have standing to bring FDCPA cases.

**B.  Supreme Court precedent – including Spokeo itself – recognizes informational injury as a concrete injury.**

In <u>Spokeo</u>, the Supreme Court confirmed that informational injury — being denied access to information to which an individual is entitled by statute — is a concrete injury under Article III. <u>Id.</u> at 1549-50. For decades, the Supreme Court has recognized that the deprivation of a statutory right to receive information—in the form and manner required by Congress—is sufficient to establish an Article III injury. In support of this principle, the <u>Spokeo</u> Court

reaffirmed its past precedent, citing <u>Public Citizen v. U.S. Department of Justice</u>, 491 U.S. 440, 449 (1989), which held that the plaintiff had standing to challenge the Justice Department's failure to provide access to information, the disclosure of which was required by the Federal Advisory Committee Act. The inability to obtain such information, the Court explained there, "constitutes a sufficiently distinct injury to provide standing to sue." <u>Id</u>. at 449. Similarly, the Spokeo Court invoked <u>Federal Election Commission v. Akins</u> for a similar point, "confirming that a group of voters' 'inability to obtain information' that Congress had decided to make public is a sufficient injury in fact to satisfy Article III." <u>Spokeo</u>, 136 S. Ct. at 1549-50 (citing <u>Akins</u>, 524 U.S. 11, 20-25 (1998)). The Supreme Court's decision in <u>Spokeo</u>, which cites both <u>Public Citizen</u> and <u>Akins</u> approvingly, only further entrenches the concept of informational injury as providing standing in this Court's Article III jurisprudence.

Ms. Bautz claimed that ARS violated the FDCPA by sending her the Letter which contained a false, deceptive, and misleading representation. Putting aside the question whether the complaint and Letter plausibly state a claim under 15 U.S.C. §1692e for false, deceptive, or misleading representations, (as Your Honor concluded on August 31, 2016 that they did), there is no doubt under <u>Spokeo</u>, <u>Public Citizen</u>, <u>Akins</u> and longstanding precedent that Ms. Bautz has sufficiently alleged a cognizable informational injury — the denial of her right to truthful information and the failure to receive accurate information —  for standing purposes. The fact that this Court held that ARS's Letter was false, deceptive, and misleading proves that Ms. Bautz was denied her right to truthful and accurate information by ARS and thus further entrenches the fact that under <u>Spokeo</u>, <u>Public Citizen</u>, and <u>Akins</u>, Ms. Bautz has standing in this matter.

Decisions from District Courts analyzing <u>Spokeo</u>, in the context of the same FDCPA violations as this matter, have cited to <u>Public Citizen</u> and <u>Akins</u> in their reasoning that plaintiffs

have standing post-Spokeo. In Prindle v. Carrington Mortgage Services, LLC, 2016 WL

4369424 (M.D. Florida, Jacksonville Division, August 16, 2016), the allegations were identical

to Ms. Bautz's, i.e., a debt collector used false, deceptive or misleading representations in a debt

collection letter in violation of 15 U.S.C. §1692e. The Prindle Court found the Plaintiff had

standing holding that, "Both Public Citizen and Akins stand for the proposition that the failure to

provide information that a statute requires to be disclosed is sufficient on its own to constitute

injury in fact. Those cases although somewhat different are analogous to this case. "There, as

here, the statutes at issue conferred a distinct legal right on certain individuals, which, when

violated created a legally cognizable injury where before no such injury existed. Id., at *9.

### C. Misrepresentations by debt collectors are among the real-world harms that Congress sought to curb in enacting the FDCPA.

Ms. Bautz's injury is one that is inherent in the nature of the claim. Congress enacted the

FDCPA with the purpose of "eliminat[ing] abusive debt collection practices by debt collectors."

15 U.S.C. § 1692(e). Through the FDCPA, Congress has conferred upon all consumers the right

to be free from certain practices that Congress has deemed abusive. Among such abusive

practices, Congress found, was the "use [of] any false, deceptive, or misleading representation or

means in connection with the collection of any debt." 15 U.S.C. §1692e. Additionally, a debt

collector may not "use any false representation or deceptive means to collect or attempt to collect

any debt or to obtain information concerning a consumer." 15 U.S.C. §1692e(10). Sections

1692e, and 1692e(10), in particular, seek to protect consumers from informational harms posed

by false, deceptive, or misleading representations made in connection with the collection of any

debt, the same type of false, deceptive and misleading representations Your Honor found ARS

made in this matter. By prohibiting such practices and providing consumers with a right to sue

for violations of that prohibition, the FDCPA implicitly confers on consumers the right to be free from those practices when they receive debt-collection communications from debt collectors.

The harm that Ms. Bautz has alleged (and Your Honor found stated a claim) is precisely one of the harms that Congress targeted and intended to guard consumers against by enacting the FDCPA: false, deceptive and misleading information relating to an attempt to collect a debt in question. As the object of a false, deceptive, or misleading representation in connection with the collection of a debt she allegedly owed, Ms. Bautz has suffered injury in precisely the form the FDCPA was intended to guard against. Ms. Bautz was "the object of a misrepresentation made unlawful under" §1692e of the FDCPA. Thus, Ms. Bautz "need not allege any <u>additional</u> harm" to satisfy Article III's concreteness requirement. <u>Spokeo</u>, 136 S. Ct. at 1549. (emphasis original)

Justice Thomas's concurrence in <u>Spokeo</u>, referred to *supra*, explains in detail that when Congress create new private rights – such as those afforded by the FDCPA to prevent deception and abuse by debt collectors (e.g., a consumer's right to receive collection letters free from false deceptive or misleading representations) Article III standing exists once those private rights have been invaded. One of the cases cited by Justice Thomas in furtherance of this principal was <u>Havens Realty Corp. v. Coleman</u>, 455 U. S. 363, 373–374 (1982), <u>Spokeo</u>, 136 S. Ct. at 1553.

In <u>Havens Realty Corp. v. Coleman</u>, the Supreme Court confronted the same type of problem in this case, whether a person has standing where no tangible harms were alleged. In <u>Havens</u>, the Supreme Court held that a housing-discrimination "tester" had standing to sue based on a violation of his "statutorily created right to truthful housing information." 455 U.S. at 374. Although the tester had no "intention of buying or renting a home" and "fully expect[ed] that he would receive false information," the Court held that he had standing because anyone "**who has been the object of a misrepresentation made unlawful under [the statute] has suffered**

16

**<u>injury in precisely the form the statute was intended to guard against, and therefore has</u>**

**<u>standing to maintain a claim for damages under the Act's provisions.</u>**" <u>Id</u>. at 373-74 (internal

quotation marks omitted). **(Emphasis added)**

The <u>Havens</u> decision and Justice Thomas citation to it in <u>Spokeo</u> makes clear that anyone

"who has been the object of a misrepresentation" – like the one made by ARS in the Letter sent

to Ms. Bautz, "made unlawful under a statute" – like the FDCPA – "has suffered injury in

precisely the form the statute was intended to guard against, and therefore has standing to

maintain a claim for damages under the Act's provisions." (quoting <u>Havens</u>, 455 U.S. at 373-74)

Just as the statute in <u>Havens</u> created a "legal right to truthful information about available

housing," 455 U.S. at 373, the FDCPA created a legal right for consumers to be free from false,

misleading or deceptive representations from a debt collectors. As set forth above, the express

purpose behind requiring true, non-misleading statements, is to protect consumers from the

parade of horribles that prompted Congress to enact the FDCPA in the first place.

It is respectfully submitted that the case for standing is stronger here than in <u>Havens</u>; whereas

the tester in <u>Havens</u> "had no intention of buying or renting a home and fully expect[ed] that he

would receive false information," <u>Id</u>., Ms. Bautz had every reason to believe ARS's

misrepresentation that the debt forgiveness offered in Letter would be reported to the IRS. Like

the "tester" in Havens, Ms. Bautz was the "object of a misrepresentation made unlawful under a

statute [FDPCA]" and has "suffered injury in precisely the form the statute [FDCPA] was

intended to guard against" (quoting <u>Havens</u>, 455 U.S. at 373-74). Therefore, pursuant to

Supreme Court precedent, <u>Havens</u>, and the principals articled in <u>Spokeo</u>, Ms. Bautz clearly has

standing to maintain a claim for damages under the FDCPA. Ms. Bautz need not allege any

additional harm beyond the one Congress has identified that it sought to curb and that she was subjected to by ARS. Spokeo 136 S. Ct. at 1549.

**D. The Plaintiff's claims have long been actionable in the Anglo-American tradition.**

The Supreme Court in Spokeo held, "[i]n determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." Id. at 1549. So, if the "alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts"—or, put in fewer words, if "the common law permitted suit" in analogous circumstances—the plaintiff will have suffered a concrete injury that can be redressed by a federal court. Id.

Although a Plaintiff's claim need not have a historical pedigree to establish standing, here the harm suffered by Ms. Bautz has a "close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." Spokeo, 136 S. Ct. at 1549. Private claims for false, deceptive or misleading representations by a party, regardless of whether that deception has caused any additional injury, has "traditionally been regarded as providing a basis for a lawsuit in English or American courts." Spokeo, 136. S. Ct. at 1549.

In Prindle, the Court held in a case with identical claims to this case – that a debt collector violated 15 U.S.C. §1692e's prohibition on false, deceptive or misleading representations in a letter sent to the plaintiff – that the plaintiff had standing post-Spokeo because the plaintiff's claims for the use of false, deceptive, or misleading representations have been recognized as legally cognizable harms under the common law. The Court in Prindle held:

> History supports a finding the harm of being subjected to abusive debt-collection practices to be a sufficiently concrete injury. Fraudulent and negligent misrepresentation have been recognized as legally cognizable harms under the common law since at least the publication of the First Restatement of the Law of Torts. See Restatement (1st) of Torts §§ 525, 552 (1938). Moreover, "a number of American jurisdictions" also recognize "a rule of strict liability for innocent misrepresentation of material fact," at

18

least in the context of a sale, rental, or exchange transaction. See Restatement (2d) of Torts § 552C & Cmt. a (1977). **As such, the harm of even an innocent misrepresentation made in attempting to collect a debt "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English and American courts."** See Spokeo, 136 S. Ct. at 1549. That each of those torts requires some showing of pecuniary harm makes no difference because, as the Supreme Court has recognized, Congress may do away with the requirement of a showing of actual damages. *See* Havens Realty Corp. v. Coleman, 455 U.S. 363, 373–74 (1982) (violation of right to truthful information about housing is actionable even without any other showing of harm)

Prindle, 2016 WL 4369424, at * FN9.

Thus the injury addressed by the FDCPA here in this matter has a "clear analog[] in our common-law tradition," Lujan v. Defenders of Wildlife, 504 U.S. 55, 580 (1992) (Kennedy, J., concurring). As such, Ms. Bautz has standing under the guidelines set forth in Spokeo because the harm she suffered – being subjected to misleading and deceptive representations by ARS – has a close relationship to a harm that has traditionally been regarding as providing a basis for lawsuit in English or American Courts." (quoting Spokeo, 136 S. Ct. at 1549).

**E. This case also illustrates the risk of tangible harm from ARS's misrepresentations, harm that itself supports standing here.**

While a concrete but intangible injury, like being subjected to false, deceptive, and misleading representations in contravention of the FDCPA, is sufficient to establish Ms. Bautz's standing, her informational injury does not stand alone. As a result of ARS's misrepresentation, consumers like Ms. Bautz face the risk of tangible harms – harms that Congress, with its "well positioned . . . judgment," meant to "elevat[e] to the status of legally cognizable injuries," Spokeo, 136 S. Ct. at 1549, when it enacted the FDCPA, *see* 15 U.S.C. § 1692(a).

At the hearing on August 31, 2016 Your Honor found that the language, "Department Stores National Bank will report forgiveness of debt as required by IRS regulations" to be a false, deceptive, or misleading representation that was material. In order to be material, "the

statement must [be capable of] influence[ing] a consumer's decision or ability to pay or

challenge a debt." Okyere v. Palisades Collection, LLC, 961 F. Supp. 2d 508, 518 (S.D.N.Y.

2013). When discussing the issue of materiality Your Honor stated as follows:

> **I conclude that the statement at issue in this case could plausibly be material
> because of a belief that tax consequences stemming from debt forgiveness could
> potentially impact whether a Plaintiff decides to pay the lesser amount offered as
> opposed to the entire debt owed or even some other option. (Emphasis added)** See
> for example Velez v. Enhanced Recovery Company, LLC, 2016 WL 1730721 at page 3
> (E.D. Pa. May 2, 2016):

>> "It would not be bizarre or idiosyncratic for the least sophisticated debtor to
>> believe that the "invocation of the IRS reasonably suggests. . .that he or she could
>> get in trouble with the IRS for refusal to pay the debt, or for obtaining any debt
>> forgiveness of $600 or more. The least sophisticated debtor could reasonably
>> assume that ERC included the Statement because it was relevant, and such a
>> debtor could believe, given the lack of specificity in the generally-stated rule that
>> mentions one exception but not others, that the action he chooses to take with
>> respect to the debt will trigger tax consequences or reporting requirements. There
>> are myriad other ways that the Statement could, without bizarre or idiosyncratic
>> interpretation, influence the least sophisticated debtor's decision-making process."

> Also, Kaff, the decision I referred to earlier at page 13, "The least sophisticated
> consumer, afraid of an audit**, may be pressured by a misstatement such as the one
> made by the Defendant into paying more of his debt to avoid the risk of triggering
> an IRS audit. (emphasis added)**

> Thus, I conclude the statement at issue in this case could plausibly satisfy the materiality
> requirement for the reasons I've stated and the motion to dismiss on that ground is
> denied.

Because of Your Honor's holding at the August 31, 2016 hearing, it is respectfully

submitted that this Court has already specifically found that the language at issue in this matter

constituted a "risk of real harm." "Intangible injuries can nevertheless be concrete," as can

injuries based on a "risk of harm." Spokeo. 136 S. Ct. at 1549–50. The "risk of harm" arises as

Your Honor stated, "**because of a belief that tax consequences stemming from debt

forgiveness could potentially impact whether a Plaintiff decides to pay the lesser amount

offered as opposed to the entire debt owed or even some other option**."

20

In <u>Kaff v. Nationwide Credit, Inc</u>., 1:13-cv-05413 (SLT), 2015 WL 12660327 (E.D.N.Y.

Mar. 31, 2015), which Your Honor cited to in your materiality reasoning, Judge Townes

detailed, in a dollars and cents fashion, how a statement like the one ARS made in this case poses

a real risk of economic harm. In <u>Kaff</u>, the statement at issue was "American Express is required

to file a form 1099C with the Internal Revenue Service for any cancelled debt of $600 or more."

Judge Townes explained, "Here Kaff owed approximately $2,382 consisting of $2,000 in

principal and $382 in interest. Had he been informed that he could seek cancellation of up to

$600 in principal and all of the interest, he would have known that he could satisfy the debt for

$1,400.01 ($2,000 - $599.99) without triggering a mandatory 1099-C report. However,

Nationwide's collection letter misled him into believing he had to pay $1,782.01 ($2,382 -

$599.99), or else he might face potential tax consequences, such as a costly audit." <u>Kaff</u>, 2015

WL 12660327, at * 8. That is why Judge Townes found that a debtor **may be pressured by a**

**misstatement such as the one made by Nationwide into paying more of his debt ($382 more**

**consisting of the interest) to avoid the risk of triggering an IRS audit**. The statement by

Nationwide posed a real risk that a person would pay $382 more than necessary to avoid

potential issues with the IRS that would in reality never occur. Furthermore, at Footnote 1 of

<u>Kaff,</u> Judge Townes noted that the statement **potentially increased the amount of debt**

**collected by falsely misrepresenting the law. (Emphasis Added**)

     In this matter, the language used by ARS poses an even bigger risk of real economic

harm than the language in <u>Kaff</u>. While the language in <u>Kaff</u> mentioned debt forgiveness of $600

or more, in this matter the language used by ARS made the Plaintiff believe that any amount of

debt forgiven, without regard to the amount, would be reported to the IRS because it's required

by IRS regulations. The language used by ARS makes a least sophisticated consumer believe

that if the amount paid on the debt was not the full amount of the debt then the forgiven amount without qualifications or conditions, would be reported to the IRS. This poses an even bigger risk than in <u>Kaff</u> because in <u>Kaff</u> a least sophisticated consumer would be led to believe that if less than $600 was forgiven there would not be reporting of the forgiven amount to the IRS. In this matter, the language used by ARS would lead a least sophisticated consumer to believe any amount of debt forgiven, even under $600, would be reported to the IRS. Thus, a debtor would be even more likely to be pressured by a misstatement such as the one made by ARS into paying more of her debt to avoid the risk of triggering an IRS audit than the statement made by Nationwide in <u>Kaff</u>. As such there is an even bigger risk than in <u>Kaff</u> that the statement potentially increased the amount of debt collected by falsely misrepresenting the law.

Congress was expressly concerned with these consequential harms when it enacted the FDCPA. As this and the <u>Kaff</u> case illustrate, misrepresenting the tax consequences of a settlement offer carries the constant "risk of [such] real harm[s]," not just for Ms. Bautz, but for all consumers so deceived, another category of harm that <u>Spokeo</u> explicitly recognizes can suffice to "satisfy the requirement of concreteness." 136 S. Ct. at 1549. Thus, the misrepresentation by ARS at issue satisfies the <u>Spokeo</u> standard for standing because it poses a "the risk of real harm." (quoting <u>Spokeo</u>, 136 S. Ct. at 1549). The false and misleading representation by ARS was not *de minimis* but rather a material violation, and one that posed a real risk of harm to the Plaintiff and her fellow class members as Your Honor stated, "**because of a belief that tax consequences stemming from debt forgiveness could potential impact whether a Plaintiff decides to pay the lesser amount offered as opposed to the entire debt owed or even some other option**." Therefore, it is respectfully submitted that the Plaintiff has standing based on the "risk of [such] real harm[s]" from ARS's misleading representation.

**POINT VI**
**PRE AND POST-SPOKEO CASE LAW DEMONSTRATES THAT THE PLAINTIFF**
**HAS STANDING IN THIS MATTER**

**A. Analogous pre-Spokeo case law from this District and Circuit held that Plaintiffs in identical cases had standing under Article III.**

In <u>Kaff</u>, Nationwide argued as a part of their motion to dismiss that the plaintiff lacked

standing to bring the action because he did not allege that he was personally injured by the

misrepresentation beyond receiving a collection letter containing a misstatement of law.

Judge Townes rejected Nationwide's argument and held:

> "The FDCPA "broadens the traditional 'injury in fact' analysis by expanding the range and scope of injuries creating constitutional standing." …Kaff has sufficiently pleaded an intrusion of a personal right protected by the FDCPA, i.e., a cognizable statutory injury. Namely, as discussed below, <u>Kaff has a right under the FDCPA to be free of abusive debt collection practices and that right was infringed when he received a collection letter which potentially increased the amount of debt collected by falsely misrepresenting the law.</u> **(emphasis added)**…Accordingly, Kaff was injured by the collection letter and has standing to pursue his claims against Nationwide.
>
> <u>Kaff</u>, 2015 WL 12660327, at * Fn1 (E.D.N.Y. Mar. 31, 2015)

Like the Plaintiff in <u>Kaff</u>, Ms. Bautz has standing because she has a right under the FDCPA

to be free of abusive debt collection practices, which was infringed when she received a

collection letter which potentially increased the amount of debt collected by falsely

misrepresenting the law. As shown earlier, in this brief and in the Plaintiff's brief in response to

Defendant's Motion to Dismiss under 12(b)(6) (ECF No. 14), <u>Kaff</u> and this present matter

involve very similar facts involving a misstatement of the tax consequences of debt forgiveness

in a collection letter. Additionally, and as shown *supra*, Your Honor cited to <u>Kaff</u> heavily in

Your opinion denying the Defendant's motion to dismiss on August 31, 2016.

In <u>Miller v. Wolpoff & Abramson, L.L.P.</u>, 321 F.3d 292, 307 (2d Cir. 2003) the Second

Circuit had the opportunity to explore Article III standing in the context of an FDCPA case. In

<u>Miller</u>, the plaintiff brought a lawsuit alleging that a debt collection law firm sent a letter which sought legal fees that it was not legally entitled to under the law. The Defendant argued that because the Plaintiff did not actually pay the prohibited legal fees that he was not damaged and had no standing. The Second circuit rejected the argument and held that actual damages are not required for standing under the FDCPA stating:

> "Accordingly, we join those courts and hold that the fact that plaintiff did not ever pay any attorneys' fees to NAN does not necessarily suggest that he was not injured for purposes of his FDCPA claim, if he can show that UC & S *attempted* to collect money in violation of the FDCPA."

Thus, the law of this Circuit and District prior to <u>Spokeo</u> establishes Plaintiff's standing here. And, as discussed *supra*, the Supreme Court's recent holding in <u>Spokeo</u> does nothing to change or reverse the precedents set down by <u>Miller</u> and <u>Kaff</u>.

**B. Courts Post-Spokeo have held that individuals in FDCPA cases have standing to bring their cases.**

The <u>Spokeo</u> decision does not deprive the Plaintiff of Article III standing to sue in this action. Although <u>Spokeo</u> was only issued five months ago (May 16, 2016), numerous courts have already analyzed its holding in the context of an alleged FDCPA violation. "Since Spokeo, the Eleventh Circuit and multiple district courts have considered whether a violation of the FDCPA itself confers standing on a plaintiff, and they have answered that question in the affirmative." <u>Linehan v. Allianceone Receivables Management, Inc</u>., Case No. C15-1012-JCC, 2016 WL 4765839, at *7 (W.D. Wash. Sept. 13, 2016).

In this matter Ms. Bautz brought a claim under 15 U.S.C. §1692e for false, deceptive or misleading statements made in a collection letter sent in connection with the collection of a debt. The most analogous cases to this matter to be decided after the <u>Spokeo</u> ruling have held that individuals alleging the same claims under the same circumstances as Ms. Bautz have standing.

In <u>Prindle v. Carrington Mortg. Servs., LLC</u>, 2016 WL 4369424 (M.D. Fla. Aug. 16, 2016) the Plaintiff, like in this matter, alleged that a written communication sent to her violated 15 U.S.C. §1692e by containing false, deceptive or misleading representation in connection with the collection of the debt. The <u>Prindle</u> Court held that the Plaintiff had standing under the Spokeo standards. "The FDCPA unambiguously grants recipients of debt-collection communications (such as Prindle) a right to be free from abusive collection practices. In other words, §1692e of the FDCPA `create[s] a private duty owed personally to' a consumer to refrain from using false, deceptive, or misleading means or representations in attempting to collect a debt. See <u>Spokeo</u>, 136 S. Ct. 1554 (Thomas, J., concurring) (quoted). **As such, because Prindle had a personal statutory right to be free from abusive debt-collection practices, and because she has alleged facts plausibly showing that Carrington violated that right, she `need not allege any <u>additional</u> harm</u>**."' <u>Prindle</u> 2016 WL 4369424, at *11 (M.D. Fla. Aug. 16, 2016) (quoting <u>Spokeo</u>, 136 S. Ct. at 1549) **(Emphasis added).**

In <u>Irvine v. I.C. Sys., Inc</u>., 2016 WL 4196812 (D. Co. July 29, 2016) the Plaintiff, like Ms. Bautz in this matter, alleged that the debt collector used a false, deceptive or misleading representation in violations of 15 U.S.C. §1692e. The Irvine Court denied the motion to dismiss, finding that "the Court agrees with plaintiff that harms from defendant's actions are sufficient to establish standing to assert an FDCPA claim" <u>Id</u>. The Irvine Court pointed out that "**through the FDCPA, Congress created statutory legal rights to be free from certain abusive debt collection practices, and a debt collector's violation of those rights may constitute a concrete and particularized injury**." <u>Id</u>. The <u>Irvine</u> Court accordingly concluded that "the harms asserted by plaintiff are sufficiently particularized and concrete to establish her actual injury and that she had standing to bring her FDCPA claim." <u>Id</u>. **(Emphasis added)**

In <u>Hayes v. Convergent Healthcare Recoveries, Inc</u>., 2016 WL 5867818 (CD Illinois,

October 7, 2016) the Plaintiff alleged that the Defendant's letter violated §1692e's prohibition of

false, deceptive or misleading representations in connection with the collection of a debt by

falsely representing the legal status of the debt. Like <u>Hayes</u>, in this matter, one of the violations

of the FDCPA Ms. Bautz alleges is ARS misrepresented the legal status of the debt by implying

that the forgiveness of the debt was subject to reporting to the IRS when in reality it was not. In

<u>Hayes</u> the Court held:

> **"Unlike Spokeo, where a "violation of one of the FCRA's <u>procedural</u> requirements may result in no harm," a violation of the right under § 1692e to be free from false or misleading representations from debt collectors creates a harm, or risk of harm, sufficient to meet the requirement of concreteness. (Emphasis added)**
>
> In contrast to the FCRA, a false or misleading representation in violation of § 1692e of the FDCPA is, by both definition and logic, not "entirely accurate." Moreover, unlike an incorrect zip code, a debt collector's failure to indicate that the debt for which collection is sought is legally unenforceable is not a "bare procedural violation." Rather, such omissions present a material risk of harm—the risk that the consumer would be misled into believing that the debt is legally enforceable. **Furthermore, a dunning letter that misleads the consumer as to the legal status of the debt is exactly the harm that Congress identified and sought to curb by creating a statutory right to accurate information under the FDCPA. (Emphasis added)**

In <u>Church v. Accretive Health</u>, Case No. 15-15708, 2016 WL 3611543 (11th Cir. July 6,

2016), which is the only Circuit Court to analyze Spokeo in the context of an FDCPA case, the

11th Circuit Court of Appeals held:

> Just as the tester-plaintiff (in <u>Havens</u> cited to *supra*) had alleged injury to her statutorily-created right to truthful housing information, so too has Church alleged injury to her statutorily- created right to information pursuant to the FDCPA. The FDCPA creates a private right of action, which Church seeks to enforce. The Act requires that debt collectors include certain disclosures in an initial communication with a debtor, or within five days of such communication….Thus, through the FDCPA, Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures.
>
> Church has sufficiently alleged that she has sustained a concrete—i.e., "real"—injury because she did not receive the allegedly required disclosures. The invasion of Church's

right to receive the disclosures is not hypothetical or uncertain; Church did not receive information to which she alleges she was entitled. While this injury may not have resulted in tangible economic or physical harm that courts often expect, the Supreme Court has made clear an injury need not be tangible to be concrete. See Spokeo, Inc., 578 U.S. at ___, 136 S. Ct. at 1549; Havens Realty Corp., 455 U.S. at 373. Rather, this injury is one that Congress has elevated to the status of a legally cognizable injury through the FDCPA. Accordingly, Church has sufficiently alleged that she suffered a concrete injury, and thus, satisfies the injury-in-fact requirement.

Church, 2016 WL 3611543, at * 3 (11th Cir. July 6, 2016).

The Prindle, Irvine, Hayes, and Church holdings are by no means outliers, but rather have been joined by an ever-growing number of district courts, which have all found Article III standing to be established when statutory rights provided by the FDCPA were violated and where, like in this matter, the debt collector's misrepresentations resulted in a "risk of harm". *See e.g.*, Bernal v. NRA Grp., LLC, No. 16 C 1904, 2016 WL 4530321, at *5 (N.D. Ill. Aug. 30, 2016) ("NRA's collection letter allegedly violated Bernal's right to be free from such misleading communication….The type of injury alleged here, receiving a debt collection letter that, it is alleged, wrongly assesses percentage-based collection costs, is concrete"); Dickens v. GC Servs. Ltd. P'ship, No. 16-cv-00803, 2016 WL 3917530, at *1-2 (M.D. Fla. July 20, 2016) (plaintiff had Article III standing to pursue FDCPA claims based on defendant's alleged failure to specify that certain rights under the FDCPA must be exercised "in writing"); Dittig v. Elevate Recoveries, LLC, No. 16CV1155, 2016 WL 4447818, at *2 (W.D. Pa. Aug. 24, 2016)("The Court also finds that Plaintiff has standing based on the alleged violations of the statutorily-created rights set forth in the FDCPA"); Hall v. Global Credit & Collection Corporation, 2016 WL 4441868 (M.D. Fla. Aug. 23, 2016); Jones v. Advanced Bureau of Collections LLP, No. 5:15-CV-16(MTT), 2016 WL 4499456, at *2 (M.D. Ga. Aug. 26, 2016); Lane v. Bayview Loan Servicing, LLC, No. 15-cv-10446, 2016 WL 3671467, at *3-5 (N.D. Ill. July 11, 2016) (plaintiff adequately established a concrete injury resulting from defendant's provision of an allegedly misleading debt collection

notice in violation of the FDCPA, because plaintiff alleged that defendant "denied him the right to information due to him under the FDCPA"); <u>Linehan v. Allianceone Receivables Management, Inc.</u>, Case No. C15-1012-JCC, 2016 WL 4765839, at *8 (W.D. Wash. Sept. 13, 2016) (The goal of the FDCPA is to protect consumers from certain harmful practices; it logically follows that those practices would themselves constitute a concrete injury); <u>McCamis v. Servis One, Inc.</u>, 2016 WL 4063403, at *2 (M.D. Fla. July 29, 2016) ("here Plaintiff alleges a concrete and particularized injury in fact: Plaintiff has statutorily created rights...to be free from being subjected to false, deceptive, unfair, or unconscionable means to collect a debt") <u>Macy v. Gc Servs.</u>, Civil Action No. 3:15-cv-819-DJH, 2016 U.S. Dist. LEXIS 134421 (W.D. KY 2016); <u>Quinn v. Specialized Loan Servicing, LLC</u>, Case No. 1:16-cv-2021, 2016 WL 4264967 (N.D. Ill. Aug. 11, 2016); <u>Sayles v. Advanced Recovery Sys., Inc</u>., No. 3:14-CV-911-CWR-FKB, 2016 WL 4522822, at *2 (S.D. Miss. Aug. 26, 2016) (Finding standing in an FDCPA action, since "Plaintiff's alleged injury is more than a bare procedural violation, **it is the very type of injury Congress sought to eradicate and thus created a right of action to protect consumers**").

As in all the above cases to be decided post-<u>Spokeo</u>, Plaintiff suffered both actual harm and risk of real harm because of ARS's false and misleading representations. The risk of real harm was directly alleged in the complaint: "the least sophisticated consumer would likely be deceived into believing that there would be a tax consequence if she accepted Defendant's offer in the Letter", and that "such a belief would be false." (Cmplt., ¶45). The risk of real harm was also affirmed by Your Honor when ruling on the issue of materiality at the August 31, 2016 hearing. The actual harm suffered by the Plaintiff was the deceptive, misleading, and abusive collection practices the Plaintiff was subjected to, in violation of her statutorily created rights to be free from such practices.

## POINT VII
## PLAINTIFF'S CLAIM IS SUBSTANTIVE NOT PROCEDURAL

In their Motion to Dismiss, the Defendant continuously argues that Plaintiff's claim against ARS is merely procedural in nature. This is simply not true; the alleged violation is substantive in nature. What separates the facts of this case from the facts of Spokeo is that the violation alleged in this matter is not procedural in nature, so Spokeo does not even apply. The FDCPA enacts a blanket prohibition against false, deceptive, and misleading representations and ARS violated this prohibition. Spokeo dealt with an alleged violation of a provision of the Fair Credit Reporting Act ("FCRA") that states an applicable entity must follow "reasonable procedures to assure maximum possible accuracy of" consumer reports. The Plaintiff in Spokeo sued alleging Spokeo did not follow proper procedures to ensure the accuracy of his report. The FCRA does not specify what a violation of "reasonable procedures" is whereas the FDCPA does specify exactly what a violation of §1692e is and it is exactly what ARS did in this matter.

Because ARS's violation is substantive it is concrete. Even if this Court were to find it was procedural in nature, the violation would still be concrete because as Spokeo counseled, "Congress can elevate even the violation of procedural rights to a concrete injury if they protect against an identified harm", and "a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." Id. at 1549. Here the rights conferred by the FDCPA "protect" against the exact "identified harm" ARS subjected Ms. Bautz to by sending the Letter. Additionally, because Your Honor found the violation of the FDCPA was material, the violation posed a real 'risk of harm' thereby establishing standing under this independent theory.

Post-Spokeo case law has rejected Defendant's exact argument that the Plaintiff's claim seeks to vindicate an interest in ARS's procedural compliance with the FDCPA. In Church, at Footnote 2 the Court stated, "In Spokeo, the Court stated that a Plaintiff "cannot satisfy the

demands of Article III by alleging a bare procedural violation." <u>Spokeo,</u> 136 S. Ct. at 1550. "This statement is inapplicable to the allegations at hand, because Church has not alleged a procedural violation. Rather, Congress provided Church with a substantive right to receive certain disclosures and Church has alleged that Accretive Health violated that substantive right." <u>Church</u>, 2016 WL 3611543, at *Fn2. In <u>Hayes</u>, the Court held **"Unlike Spokeo, where a** "violation of one of the FCRA's **procedural** requirements may result in no harm," a violation of the right under §1692e to be free from false or misleading representations from debt collectors creates a harm, or risk of harm, sufficient to meet the requirement of concreteness. **(Emphasis added)**. In <u>Irvine</u>, the Court stated, "Plaintiff's lawsuit does not seek to merely vindicate an interest in defendant's procedural compliance with the FDCPA; rather, plaintiff's suit is based on her claim that defendant violated her substantive rights under the FDCPA by its conduct and communications regarding plaintiff's debt." <u>Irvine</u>, 2016 WL 4196812, at *3. Consistent with the Courts in <u>Church</u>, <u>Hayes</u>, and <u>Irvine</u>, the Plaintiff's claim is not to vindicate an interest in ARS's procedural compliance with the FDCPA but rather that they violated her substantive rights under the FDCPA. <u>Hayes</u> and <u>Irvine</u> deal with the same violation of 15 U.S.C. §1692e as this case.

Defendant also argues that Plaintiff's claim is technical and harmless. Your Honor specifically rejected this exact argument when you found the violation at issue was not technical and harmless but material. Defendant is trying to argue the same argument they made in their motion to dismiss under Rule 12(b)(6) [ECF No. 13] that Your Honor has already rejected.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff, Virginia T. Bautz, respectfully requests that the Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) filed by Defendant, ARS National Services, Inc. be denied.

Dated:  October 31, 2016

The Law Offices of Gus Michael Farinella, PC

/s/ Ryan Gentile

By:_____

Ryan Gentile, Esq.
110 Jericho Turnpike – Suite 100
Floral Park, NY 11001
516-326-2333
rlg@lawgmf.com