UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

№ 16-CV-768 (JFB) (SIL)

VIRGINIA T. BAUTZ,
ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED,

Plaintiffs,

VERSUS

ARS NATIONAL SERVICES, INC.,

Defendant.

**MEMORANDUM AND ORDER**
December 23, 2016

JOSEPH F. BIANCO, District Judge:

Plaintiff Virginia T. Bautz ("plaintiff" or "Bautz") brings this putative class action against ARS National Services, Inc. ("defendant" or "ARS") under the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. §§ 1692 *et seq*.

Defendant now moves to dismiss plaintiff's complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of standing. Because the Court concludes that plaintiff has sufficiently alleged (1) a substantive violation of the FDCPA that demonstrates a concrete and particularized injury-in-fact; or, alternatively, (2) a procedural violation of the FDCPA that poses a "risk of real harm" to plaintiff's statutory interests, *Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. 2016) (citing *Spokeo Inc. v. Robins*, --- U.S. ---, 136 S. Ct. 1540, 1549 (2016)), defendant's motion is denied.

Plaintiff alleges that defendant violated Section 1692e of the FDCPA by including a "false, deceptive, or misleading representation" in a letter to her concerning the collection of outstanding credit card debt, and the Court previously determined that plaintiff had plausibly stated a claim that the representation at issue was materially misleading to the least sophisticated consumer. The Court now holds, consistent with Supreme Court and Second Circuit precedent, that adequately alleging a "false, deceptive, or misleading representation" under Section 1692e that is materially misleading to the least sophisticated consumer satisfies the concrete injury component of Article III standing because such conduct violates an individual's substantive statutory right to be free of abusive debt practices. The Supreme

1

Court's decision in *Spokeo*, as well as the Second Circuit's decision in *Strubel*, do not suggest otherwise; rather, both cases addressed alleged *procedural* violations of statutes, which do not automatically confer standing absent a concrete harm that satisfies the injury-in-fact requirement of Article III. In contrast, here, the claim involves an alleged materially false and misleading statement that is a *substantive* violation of Section 1692e, and confers standing upon the plaintiff without running afoul of the guidance in *Spokeo* and *Strubel*. In any event, even assuming *arguendo* that plaintiff's alleged Section 1692e claim could somehow be considered to be a procedural, rather than substantive, violation of the FDCPA, the Court holds that plaintiff still has standing, under *Spokeo* and *Strubel*, because, as to the particular alleged violation in this case, she has "demonstrate[d] a sufficient 'risk of real harm' to the underlying [statutory] interest to establish concrete injury without 'need to allege any *additional* harm beyond the one Congress has identified.'" *Strubel*, 842 F.3d at 189 (brackets omitted) (quoting *Spokeo*, 136 S. Ct. at 1549). The Court emphasizes that its analysis is limited to this claim under Section 1692e of the FDCPA, and it offers no view on whether other provisions of the FDCPA confer substantive rights.

I. BACKGROUND

A. The FDCPA

Because the instant motion and the Court's analysis address plaintiff's interests under the FDCPA, a brief discussion of the purpose and structure of the relevant statutory scheme is required.

Congress enacted the FDCPA because of "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). The statute's purpose is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Id*. § 1692(e). To that end, the FDCPA prohibits, *inter alia*, "[t]he false representation of (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt," and, more generally, "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id*. §§ 1692e(2), (10). Such "conduct is a violation" of the FDCPA. *Id*. § 1692e.

As a remedy for statutory infractions, the FDCPA permits recovery in individual actions for damages equal to the plaintiff's actual loss and/or statutory damages of no more than $1,000, *id*. §§ 1692k(a)(1)-(2)(A); and in class actions for "(i) such amount for each named plaintiff as could be recovered" in an individual action, "and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector," *id*. § 1692k(a)(2)(B). In addition, a successful individual or class action may recover "the costs of the action, together with a reasonable attorney's fees as determined by the court." *Id*. § 1692k(a)(3).

B. Facts

The following facts are taken from the complaint. The Court assumes them to be true for the purpose of deciding this motion and construes them in the light most favorable to the plaintiff as the non-moving party.

Prior to December 2015, plaintiff incurred a credit card debt owed to Department Stores National Bank ("DSNB"). (Compl., ECF No. 1, ¶ 13.) On or about December 31, 2015, defendant, a debt collector, mailed or caused to be mailed to plaintiff a letter (the "Letter") that attempted to collect that debt. (*Id*. ¶¶ 10-12, 18; *id*., Ex. A.) The Letter stated that plaintiff had an outstanding debt of $849.35 and "offer[ed] to settle [her] account for the reduced amount of $467.15. That's a savings of $382.20." (*Id*. ¶¶ 22-23; *id*., Ex. A.) In addition, it said that "Department Stores National Bank will report forgiveness of debt as required by IRS [i.e., Internal Revenue Service] regulations." (*Id*. ¶ 24; *id*., Ex. A.)

Plaintiff alleges that the language in the Letter "is deceptive and misleading and violated the FDCPA," that defendant's "debt collection practice is largely automated and utilizes standardized form letters," and that defendant mailed or caused to be mailed similar correspondence "over the course of the past year to hundreds of New York consumers . . . ." (*Id*. ¶¶ 25, 27, 30.) Specifically, plaintiff asserts that the statement that "'Department Stores National Bank will report forgiveness of debt as required by IRS regulations' [the "IRS Language"] could reasonably be understood by the least sophisticated consumer to mean that IRS regulations require that Department Stores National bank report all forgiveness of debt." (*Id*. ¶ 38.) Plaintiff claims that the IRS Language "giv[es] erroneous and incomplete tax information because in actual fact and according to IRS regulations, Department Stores National Bank '**will not**' report to the IRS forgiveness of debt of less than $600." (*Id*. ¶ 39.) Because the Letter offered to settle plaintiff's debt for only $382.20, plaintiff alleges that the IRS Language was "an attempt by ARS to make consumers think that the IRS requires the reporting of all forgiveness of debt." (*Id*. ¶ 42.) Plaintiff further claims that "[s]uch a statement in a collection letter suggests to the least sophisticated consumer that failure to pay will get the consumer into trouble with the IRS," and that the "least sophisticated consumer would likely be deceived into [falsely] believing that there would be a tax consequence if she accepted Defendant's offer . . . ." (*Id*. ¶¶ 44-45.)

Accordingly, plaintiff asserts that defendant violated the FDCPA, 15 U.S.C. §§ 1692e, 1692e(2), and 1692e(10); and seeks statutory damages, attorney's fees, and costs on behalf of herself and a putative class pursuant to 15 U.S.C. § 1692k. (*Id*. at 9.)

C. Procedural History

Plaintiff commenced this action on February 15, 2016. (ECF No. 1.) On June 2, 2016, defendant filed its first motion to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 13.) That motion was fully briefed on July 14, 2016 (ECF No. 15), and the Court held oral argument on August 24, 2016 (ECF No. 17.)

The Court denied the first motion to dismiss in an oral ruling on August 31, 2016. (ECF No. 19.) It held that plaintiff had sufficiently pled that the Letter contained a "false, deceptive, or misleading representation" under an "an objective test based on the understanding of the least

3

sophisticated consumer." (Tr. of Aug. 31, 2016 Oral Ruling, ECF No. 21, at 3:5-6, 18-22 (citing *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993), and *Vu v. Diversified Collection Servs., Inc.*, 293 F.R.D. 343, 359 (E.D.N.Y. 2013)).) Specifically, the Court concluded that "the combination of the term 'will report', as well as the term 'as required'" in the IRS Language "reasonably communicates to the least sophisticated consumer that any forgiveness of debt without any qualifications or conditions will be reported to the IRS because it is required by the IRS regulations." (*Id.* at 4:25-5:5.) In addition, the Court determined that plaintiff had adequately alleged that the IRS Language was "material," and therefore actionable under the FDCPA, because a "belief that tax consequences [would] stem[] from debt forgiveness could potentially impact whether the Plaintiff decides to pay the lesser amount offered, as opposed to the entire debt owed or even some other option." (*Id.* at 6:21-7:1 (citing *Valez v. Enhanced Recovery Co., LLC*, No. 16-CV-164, 2016 WL 1730721, at *3 (E.D. Pa. May 2, 2016).) The Court observed that the "[t]he least sophisticated consumer afraid of audit may be pressured by any statement such as one made by the Defendant into paying more of his debt to avoid the risk of triggering an IRS audit." (*Id.* at 7:16-19 (quoting *Kaff v. Nationwide Credit, Inc.*, No. 13-CV-5413 (SLT) (VVP), 2015 WL 12660327, at *7 (E.D.N.Y. Mar. 31, 2015).)

Defendant subsequently filed the instant motion to dismiss for lack of subject matter jurisdiction on September 30, 2016. (ECF No. 22.) Plaintiff submitted her opposition on October 31, 2016 (ECF No. 23), and defendant filed its reply on November 14, 2016 (ECF No. 24). On December 5, 2016, defendant submitted a supplemental authority letter providing a copy of the Second Circuit's recent decision in *Strubel*, 842 F.3d at 181. (ECF No. 25.) The Court held argument on December 7, 2016 (ECF No. 26) and has carefully considered the parties' submissions.

## II. STANDARD OF REVIEW

When a court reviews a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). The burden of proving subject matter jurisdiction by a preponderance of the evidence is on the plaintiff. *Aurecchione v. Schoolman Transp. Sys.*, *Inc.,* 426 F.3d 635, 638 (2d Cir. 2005). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings" to resolve the jurisdictional issue, *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)), but a court "may not rely on conclusory or hearsay statements contained in the affidavits," *Attica Cent. Sch.*, 386 F.3d at 110.

Federal courts are courts of limited jurisdiction and may not preside over cases if subject matter jurisdiction is absent. *See Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000). Unlike personal jurisdiction, lack of subject matter jurisdiction cannot be waived and may be raised at any time by a party or by the Court *sua sponte. Id.* "If subject matter jurisdiction is lacking, the action must be dismissed." *Id.*; *see also* Fed. R. Civ. P. 12(h)(3). Where, as here, the "case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating'"

each of Article III's constitutional standing requirements. *Spokeo*, 136 S. Ct. at 1547.

III. DISCUSSION

Defendant argues that this Court lacks subject matter jurisdiction because plaintiff has failed to allege the injury-in-fact necessary to establish Article III standing. For the reasons set forth below, the Court disagrees.

A. Applicable Law

"The jurisdiction of federal courts is defined and limited by Article III of the Constitution[, and] the judicial power of federal courts is constitutionally restricted to 'cases' and 'controversies.'" *Flast v. Cohen*, 392 U.S. 83, 94 (1968). "This limitation is effectuated through the requirement of standing." *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471-72 (1982)). "It is axiomatic that there are three Article III standing requirements: (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision.'" *Id.* (brackets and citation omitted); *see also Lamar Adver. of Penn, LLC v. Town of Orchard Park, N.Y.*, 356 F.3d 365, 373 (2d Cir. 2004) ("To meet Article III's constitutional requirements for standing, a plaintiff must allege an actual or threatened injury to himself that is fairly traceable to the allegedly unlawful conduct of the defendant." (citation omitted)).

Article III's injury-in-fact component requires that a plaintiff's alleged injury "must be 'concrete and particularized' as well as 'actual or imminent, not conjectural or hypothetical.'" *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Further, the alleged injury must "affect[] the plaintiff in a personal and individual way to confirm that the plaintiff has a personal stake in the controversy and avoid having the federal courts serve as merely publicly funded forums for the ventilation of public grievances or the refinement of jurisprudential understanding." *Id*. (citations omitted).

"Congress's authority to create new legal interests by statute, the invasion of which can support standing, is beyond question." *Strubel*, 842 F.3d at 188 (citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (recognizing that injury required by Art. III may be based on "statutes creating legal rights"), and *Lujan,* 504 U.S. at 578 (recognizing Congress's authority to "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law")). However, even where Congress has codified a statutory right, a plaintiff must still allege that she has suffered a concrete and particularized injury connected to that interest. *Id*.; *see also Spokeo*, 136 S. Ct. at 1547-48. In other words, the creation of a statutory interest does not vitiate Article III's standing requirements.

In *Spokeo*, the Supreme Court addressed whether the respondent had standing to assert a claim under the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. §§ 1681 *et seq.* 136 S. Ct. at 1544. The respondent alleged that the petitioner had violated the FCRA by including false information about him in a consumer report. 136 S. Ct. at 1546. The Court noted that, although a concrete injury need not be tangible to satisfy Article III,

> Congress' role in identifying and elevating intangible harms does not

mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation.

*Id*. at 1549. Accordingly, "a bare procedural violation, divorced from any concrete harm, [would not] satisfy the injury-in-fact requirement of Article III." *Id*. (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing."), and *Lujan*, 504 U.S. at 572)).

Nevertheless, the Supreme Court recognized that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," and "a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id*. As examples, the Court cited two of its precedents concerning statutes that conferred informational rights of access: (1) *Federal Election Commission v. Akins*, 524 U.S. 11 (1998), which held that voters had standing to seek disclosure of information pursuant to the Federal Election Campaign Act, *id*. at 20-25; and (2) *Public Citizen v. United States Department of Justice*, 491 U.S. 440 (1989), which held that the failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue," *id*. at 449.

The Supreme Court ultimately concluded that the FCRA embodied Congress's intent to "curb the dissemination of false information by adopting procedures designed to decrease that risk," but that the respondent could not "satisfy the demands of Article III by alleging a bare procedural violation." *Id*. at 1550. The Court remanded to the Ninth Circuit for a determination as to "whether the particular procedural violations alleged in this case entail a degree of risk sufficient to meet the concreteness requirement," and it cautioned that those violations may not constitute injury-in-fact because, for example, the misinformation at issue might turn out to be accurate or too insignificant to "cause harm or present any material risk of harm." *Id*. ("It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." (footnote omitted)).

The Second Circuit recently applied *Spokeo* in *Strubel* to a suit brought under the Truth In Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq*. There, the plaintiff sought statutory damages for an allegedly deficient credit card agreement, arguing that the defendant had failed to disclose that

> (1) cardholders wishing to stop payment on an automatic payment plan had to satisfy certain obligations; (2) [the defendant] was statutorily obliged not only to acknowledge billing error claims within 30 days of receipt but also to advise of any corrections made during that time; (3) certain identified rights pertained only to disputed credit card purchases for which full payment had not yet been made, and did not apply to cash advances or checks that accessed credit card accounts; and (4) consumers dissatisfied with a credit card purchase had to contact [the defendant] in writing or electronically.

6

*Strubel*, 842 F.3d at 186-86. The defendant relied on *Spokeo* to argue that plaintiff lacked standing to assert these claims because they were procedural in nature.

As a threshold matter, the Second Circuit held that it did "not understand *Spokeo* categorically to have precluded violations of statutorily mandated procedures from qualifying as concrete injuries supporting standing." *Id*. at 189. Instead, the Supreme Court made clear that "some violations of statutorily mandated procedures may entail the concrete injury necessary for standing," *id*., and "where Congress conferred [a] procedural right to protect a plaintiff's concrete interests," the critical inquiry is whether "the procedural violation presents a 'risk of real harm' to that concrete interest," *id*. at 190 (quoting *Spokeo*, 136 S. Ct. at 1549).

Under that framework, the Second Circuit concluded that the plaintiff had standing to assert two of her four TILA claims concerning "required notice that (1) certain identified consumer rights pertain only to disputed credit card purchases not yet paid in full, and (2) a consumer dissatisfied with a credit card purchase must contact the creditor in writing or electronically." *Id*. The Court found that

> [t]hese disclosure requirements do not operate in a vacuum . . . Rather, each serves to protect a consumer's concrete interest in "avoiding the uninformed use of credit," a core object of the TILA. . . . For that reason, a creditor's alleged violation of each notice requirement, by itself, gives rise to a "risk of real harm" to the consumer's concrete interest in the informed use of credit. Having alleged such procedural violations, Strubel was not required to allege "any *additional* harm" to demonstrate the concrete injury necessary for standing.

*Id*. at 190-91 (brackets, citations, and footnote omitted). Moreover, the Second Circuit held, with respect to those claims, that the plaintiff sought

> to vindicate interests particular to her—specifically, access to disclosures of her own obligations . . . The failure to provide such required disclosure of consumer obligations thus affects Strubel "in a personal and individual way," and her suit is not "a vehicle for the vindication of the value interests of concerned bystanders" or the public at large.

*Id*. at 191 (citations omitted).

In contrast, the Court found that the plaintiff did not have standing as to her claims concerning notice of automatic payment plans and reported billing error. The Second Circuit determined that the defendant "did not offer an automatic payment plan at the time Strubel held the credit card at issue," and that the plaintiff thus could not "establish that [the defendant's] failure to make this disclosure created a 'material risk of harm'—or, indeed, any risk of harm at all—to Strubel's interest in avoiding the uninformed use of credit." *Id*. at 191-92 (quoting *Spokeo*, 136 S. Ct. at 1550). With respect to the billing error claim, the Second Circuit found that "the bare procedural violation alleged by Strubel presents an insufficient risk of harm to satisfy the concrete injury requirement of standing" because the "plaintiff fail[ed] to show either (1) that the creditor's challenged notice caused her to alter her credit behavior from what it would have been upon proper notice, or (2) that, upon reported billing error, the creditor failed to honor its

7

statutory response obligations to consumers." *Id.* at 194 (footnote omitted). Moreover, the plaintiff "concede[d] that she never had reason to report any billing error in her credit card statements. Thus, she [did] not—and [could not]—claim concrete injury . . . ." *Id.* at 193.

Read together, *Spokeo* and *Strubel* reaffirm the long-standing principle that Congress can recognize new interests—either tangible or intangible—through legislation and confer private rights of action to protect those interests. However, identifying a statutory violation does not automatically establish injury-in-fact for purposes of Article III standing. Where a plaintiff sues to enforce a statutory right, the test for standing under *Spokeo* and *Strubel* is two-fold. *First*, a court must determine whether the purported infraction is procedural in nature. *Second*, if so, a court must determine whether that procedural violation presents a "material risk of harm" to the underlying interest(s) that Congress sought to protect by enacting the apposite statute. If a plaintiff satisfies this standard, then she need not allege "any additional harm"—pecuniary or otherwise—beyond the procedural violation itself.

B. Analysis

Defendant argues that plaintiff does not have standing to assert her FDCPA claims because she has "failed to allege a concrete and particularized injury-in-fact" connected to the IRS Language, which defendant characterizes as a "voluntary disclosure" that "merely inform[ed] Ms. Bautz that DSNB will comply with federal law and the Internal Revenue Service (IRS) regulations." (Def.'s Mem. of Law in Supp. of Mot. to Dismiss for Lack of Subject Matter Jurisdiction ("Def.'s Br."), ECF No. 22-1, at 1.) Defendant invokes *Spokeo,* and *Strubel* in its supplemental authority letter, to advance that argument, claiming that plaintiff's complaint asserts a "bare procedural violation" of the FDCPA. (Def.'s Br. at 5; Def.'s Letter of Dec. 5, 2016 ("Def.'s Suppl. Letter"), ECF No. 25, at 1.)

For the reasons stated below, that reliance is misplaced, and the Court concludes that plaintiff has alleged (1) a substantive violation of the FDCPA resulting in a concrete and particularized injury; or, alternatively, (2) a procedural violation of the FDCPA that poses a "material risk of harm" to plaintiff's statutory interests sufficient to satisfy Article III's injury-in-fact requirement.

1. Substantive Violation

a. Concrete Injury

As a threshold matter, the test articulated in *Spokeo* and *Strubel* and summarized *supra* concerns procedural violations of statutory schemes. In such cases, a court must determine whether the purported infraction presents a "risk of real harm" to concrete statutory interests, *Strubel*, 842 F.3d at 189 (quoting *Spokeo*, 136 S. Ct. at 1549), or instead implicates "a procedural right *in vacuo*," *id.* (quoting *Summers*, 555 U.S. at 496).

However, as noted, *Spokeo* did not disturb the Supreme Court's prior precedent recognizing that "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" 136 S. Ct. at 1549 (quoting *Lujan*, 504 U.S. at 578); *see also id.* at 1553 (Thomas, J., concurring) ("Congress can create new private rights and authorize private plaintiffs to sue based simply on the violation of those private rights. . . . A plaintiff seeking to vindicate a statutorily created private right need not

8

allege actual harm beyond the invasion of that private right." (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982) (recognizing standing for a violation of the Fair Housing Act), and *Tennessee Elec. Power Co. v. TVA*, 306 U.S. 118, 137-38 (1939) (recognizing that standing can exist where "the right invaded is a legal right,—one of property, one arising out of contract, one protected against tortious invasion, or one founded on a statute which confers a privilege"))). The Court cited approvingly Justice Kennedy's concurrence in *Lujan,* which "explained that 'Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" *Id*. at 1549 (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring)). Moreover, the Court emphasized that, in determining whether a violation of a statutorily-protected interest constitutes a *de facto* injury, "both history and the judgment of Congress play important roles," and courts must therefore consider (1) whether the statutory violation bears a "close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," and (2) Congress's judgment in establishing the statutory right. *Id*. *Strubel* similarly observed that "Congress's authority to create new legal interests by statute, the invasion of which can support standing, is beyond question." 842 F.3d at 188 (citing *Warth*, 422 U.S. at 500).

Thus, in cases where a plaintiff sues to enforce a substantive legal right conferred by statute, she has standing to pursue that claim without need to allege a "material risk of harm" because the infringement of that right constitutes, in and of itself, a concrete injury. *See, e.g.*, *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 995 & n.2 (11th Cir. 2016) (per curiam); *Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 5339806, at *11-12 (N.D. Cal. Sept. 23, 2016); *Prindle v. Carrington Mortg. Servs., LLC*, No. 3:13-CV-1349-J-34PDB, 2016 WL 4369424, at *8 (M.D. Fla. Aug. 16, 2016). Put differently, there is a meaningful distinction between the direct violation of a specific statutory interest that Congress has recognized—for example, the right to truthful information in debt collection communications—and an ancillary procedural infraction that may or may not materially harm that interest. The former, if sufficiently alleged, establishes concrete injury for purposes of Article III, whereas the latter, under *Spokeo* and *Strubel*, requires a "real risk of harm" to the underlying right to ensure that the plaintiff does not seek relief for a "bare procedural violation" that is not constitutionally cognizable.

Accordingly, the Supreme Court found standing in a Fair Housing Act ("FHA") case where "'testers' . . . who, without an intent to rent or purchase a home or apartment, pose[d] as renters or purchasers for the purpose of collecting evidence of unlawful steering practices" that evidenced racial discrimination. *Havens*, 455 U.S. at 373. The Court emphasized that "congressional intention cannot be overlooked in determining whether testers have standing to sue" and found that Section 804(d) of the FHA "establishes an enforceable right to truthful information concerning the availability of housing." *Id*.; *see also id*. at 374 n.14 ("Congress' decision to confer a broad right of truthful information concerning housing availability was undoubtedly influenced by congressional awareness that the intentional provision of misinformation offered a means of maintaining segregated housing."). Thus, a "tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury *in precisely the form* the statute was intended to guard against, and therefore has standing

9

to maintain a claim for damages under the [FHA's] provisions." *Id*. at 373-74 (emphasis added).

Moreover, the fact that a "tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, [did] not negate the simple fact of injury within the meaning of § 804(d)." *Id*. at 374. In other words, the Supreme Court did not require the testers to allege reliance on the discriminatory misinformation and consequential tangible harm, such as pecuniary damages: The mere act of providing misinformation was, in this context, sufficient to establish injury-in-fact. *See also Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 903-04 (2d Cir. 1993) (plaintiffs had standing under the FHA to challenge discriminatory advertisements even though the defendants alleged, and the Second Circuit accepted as true *arguendo*, that plaintiffs were not in the market for housing when they saw those advertisements).

As with the FHA, Congress enacted the FDCPA to remedy a distinct problem: "abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To that end, in Section 1692e Congress specifically precluded the "use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt," *id.* § 1692e, and to "accomplish these goals, the FDCPA creates a private right of action for debtors who have been harmed by abusive debt collection practices," *Benzemann v. Citibank N.A.*, 806 F.3d 98, 100 (2d Cir. 2015) (citing 15 U.S.C. § 1692k). Thus, through Section 1692e of the FDCPA, Congress established "an enforceable right to truthful information concerning" debt collection practices, *Havens*, 455 U.S. at 373, a decision that "was undoubtedly influenced by congressional awareness that the intentional provision of misinformation" related to such practices, *id.* at 374 n.14, "contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy," 15 U.S.C. § 1692(a).

The Second Circuit has "'consistently interpreted the statute with [these] congressional object[s] in mind,'" and "because the FDCPA is 'primarily a consumer protection statute,'" courts "must construe its terms 'in liberal fashion [to achieve] the underlying Congressional purpose.'" *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016) (citations omitted). Accordingly, prior to *Spokeo*, the Second Circuit held that "actual damages are not required for standing under the FDCPA." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2d Cir. 2003) (finding that the fact "that plaintiff did not ever pay any attorneys' fees . . . [did] not necessarily suggest that he was not injured for purposes of his FDCPA claim, if he [could] show that [defendant debt collector] *attempted* to collect money in violation of the FDCPA"). Other circuit courts adopted the same position because the FDCPA "is blind when it comes to distinguishing between plaintiffs who have suffered actual damages and those who have not." *Keele v. Wexler*, 149 F.3d 589, 593-94 (7th Cir. 1998) ("Indeed, the FDCPA is designed to protect consumers from the unscrupulous antics of debt collectors, irrespective of whether a valid debt actually exists."); *see also Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982). Citing this precept, the district court in

*Kaff*—a decision this Court cited in its oral ruling denying defendant's first motion to dismiss—found standing to assert an FDCPA Section 1692e claim arising from a statement similar to the IRS Language because the plaintiff had a "right under the FDCPA to be free of abusive debt collection practices and that right was infringed when he received a collection letter which potentially increased the amount of debt collected by falsely misrepresenting the law." 2015 WL 12660327, at *2 n.1.

Here, the Court has already determined that plaintiff sufficiently alleged a material violation of the FDCPA based on the IRS Language because a "belief that tax consequences [would] stem[] from debt forgiveness could potentially impact whether the Plaintiff decides to pay the lesser amount offered, as opposed to the entire debt owed or even some other option." (Tr. of Aug. 31, 2016 Oral Ruling at 6:21-7:1.) The Court also found that "[t]he least sophisticated consumer afraid of audit may be pressured by any statement such as one made by the Defendant into paying more of his debt to avoid the risk of triggering an IRS audit." (*Id*. at 7:16-19). Thus, defendant is wrong to claim that plaintiff has not alleged a concrete injury because she failed to identify "any actual damages" stemming from the IRS Language, such as that "she paid the Debt [that plaintiff owed] or that the Letter influenced her decision to pay the Debt in any way." (Def.'s Br. at 8, 13; *see also id.* at 14 ("Ms. Bautz has identified no economic harm; no particularized damage to her; no concrete injury in the Complaint. She pleads that she did not respond to the Letter, she did not call ARS and she did not speak to anyone from ARS concerning alternative arrangements to settle the Debt if she cannot make the offered payments-as proposed to her in the Letter. In fact, the Complaint fails to provide any idea at all as to what she may have done in response to the Letter or how she felt when she received it.").) Under *Miller*, making a false statement in connection with an attempt to collect a debt is sufficient harm for standing purposes. In other words, a plaintiff who receives such a misrepresentation "has suffered injury in precisely the form [Section 1692e of the FDCPA] was intended to guard against," *Havens*, 455 U.S. at 373-74, and adequately alleging a "false, deceptive, or misleading representation" that is materially misleading to the least sophisticated consumer thus satisfies the concrete injury component of Article III.[1]

Further, neither *Spokeo* nor *Strubel* abrogated this principle. Contrary to defendant's view that *Spokeo* "definitively holds that a bare statutory violation, 'divorced from any concrete harm,' is not enough to create standing" (Def.'s Br. at 14), the Supreme Court clearly identified "bare *procedural* violations, divorced from any concrete harm" as a species of alleged injury that would not satisfy Article III standing, 136 S. Ct. at 1549 (emphasis added). While the Court said that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right," and that "Article III standing requires a concrete injury even in

---

[1] To the extent that defendant argues that the IRS Language allegation is "frivolous" or immaterial (Def.'s Br. at 9), that argument is foreclosed by this Court's August 31, 2016 oral ruling denying defendant's 12(b)(6) motion to dismiss. *See Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) ("The law of the case doctrine commands that 'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case' unless 'cogent and compelling reasons militate otherwise.'" (citation omitted)).

11

the context of a statutory violation," *id.*,[2] the Court recognized, as discussed above, that a statutory infraction may result in *de facto* injury-in-fact where historical practice and congressional judgment support finding a substantive right. This Court has already outlined Congress's rationale for enacting the FDCPA and granting a right to be free from abusive debt practices, and "[f]raudulent and negligent misrepresentation have been recognized as legally cognizable harms under the common law since at least the publication of the First Restatement of the Law of Torts." *Prindle*, 2016 WL 4369424, at *8 n.9; *see also, e.g.*, *Neal v. Clark*, 95 U.S. 704, 709 (1877) (discussing the meaning of common-law fraud).

Moreover, the FDCPA provision at issue here—15 U.S.C. § 1692e—differs from the FCRA section discussed in *Spokeo*, which "imposes a host of [procedural] requirements concerning the creation and use of consumer reports" that consumer reporting agencies must follow, 136 S. Ct. at 1545, and the TILA provisions and regulations at issue in *Strubel*, which impose certain mandatory disclosure requirements on creditors, 842 F.3d at 186-87. Instead of requiring that debt collectors follow certain technical specifications, Section 1692e of the FDCPA, like Section 804(d) of the FHA, created a "new private right[] and authorize[d] private plaintiffs to sue based simply on the violation of [that] private right[]," *Spokeo*, 136 S. Ct. at 1553 (Thomas, J., concurring)—namely, the right to be free from "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e.

Accordingly, the majority of post-*Spokeo* decisions that have analyzed standing under the FDCPA have found that alleging a "use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, establishes a concrete injury. In *Church*, 654 F. App'x at 990, the Eleventh Circuit—which is the only federal appellate court to have addressed this issue as of this ruling—analogized the FDCPA to the FHA claim raised in *Havens*. The court found that "[j]ust as the tester-plaintiff had alleged injury to her statutorily-created right to truthful housing information [in *Havens*], so too has [the plaintiff] alleged injury to her statutorily-created right to information pursuant to the FDCPA" by virtue of pleading that she received a debt collection

---

[2] *Spokeo*'s citation to *Summers* and *Lujan* for these propositions is instructive. In *Summers*, the plaintiffs asserted they had "suffered procedural injury" because they were "denied the ability to file comments on some Forest Service actions and w[ould] continue to be so denied." 555 U.S. at 496. However, the Supreme Court found that "a procedural right *in vacuo* . . . is insufficient to create Article III standing. Only a 'person who has been accorded a procedural right to protect *his concrete interests* can assert that right without meeting all the normal standards for redressability and immediacy.'" *Id.* (citation omitted). Likewise, in *Lujan*, the plaintiffs argued that they had a "procedural right" under the Endangered Species Act to "file suit in federal court to challenge [an agency's] failure to" consult with the Secretary of the Interior as to the impact of an agency's actions on endangered wildlife. 504 U.S. at 572 (brackets omitted). The Supreme Court held that the plaintiffs lacked standing because this was "not a case where plaintiffs are seeking to enforce a procedural requirement the disregard of which could impair a separate concrete interest of theirs," but rather a suit "raising only a generally available grievance about government— claiming only harm to his and every citizen's interest in proper application of the Constitution and laws . . . ." *Id.* at 572-73.

As discussed *supra* and *infra*, unlike *Summers* and *Lujan*, plaintiff has asserted a violation of a substantive statutory right that resulted in harm to her, and not the public generally. Accordingly, she has pled a concrete and particular injury that supports Article III standing.

letter that did not contain statutorily-mandated disclosures. *Id*. at 994. Notwithstanding that the plaintiff "did not allege that she suffered actual damages . . . [but] simply allege[d] that upon receiving the letter in question, she 'was very angry' and 'cried a lot,'" the Eleventh Circuit held that the plaintiff "sufficiently alleged that she has sustained a concrete—*i.e.*, 'real'—injury because she did not receive the allegedly required disclosures." *Id*. at 991, 995. The court distinguished *Spokeo*, finding it "inapplicable to the allegations at hand, because [the plaintiff] has not alleged a procedural violation. Rather, Congress provided [the plaintiff] with a substantive right to receive certain disclosures and [the plaintiff] has alleged that [the defendant] violated that substantive right." *Id*. at 995 n.2.

Several district courts have taken the same approach, finding that the "FDCPA unambiguously grants recipients of debt-collection communications . . . a right to be free from abusive collection practices," and that a plausible allegation that the defendant violated that right through use of a false, deceptive, or misleading debt collection communication establishes concrete harm. *Prindle*, 2016 WL 4369424, at *11; *see also, e.g.*, *Kaymark v. Udren Law Offices, P.C.*, No. CV 13-419, 2016 WL 7187840, at *7 (W.D. Pa. Dec. 12, 2016) ("Under these circumstances, [the defendant's] alleged violation of [the plaintiff's] right to truthful information and freedom from efforts to collect unauthorized debt constitutes a concrete injury and satisfies Article III's injury-in-fact requirement." (footnote omitted)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, No. 115CV01924LJMDKL, 2016 WL 7179367, at *3 (S.D. Ind. Dec. 9, 2016); *Linehan v. Allianceone Receivables Mgmt., Inc.*, No. C15-1012-JCC, 2016 WL 4765839, at *7-8 (W.D. Wash. Sept. 13, 2016) ("The goal of the FDCPA is to protect consumers from certain harmful practices; it logically follows that those practices would themselves constitute a concrete injury.") (collecting cases); *Irvine v. I.C. Sys., Inc.*, No. 14-CV-01329-PAB-KMT, 2016 WL 4196812, at *3 (D. Colo. July 29, 2016) ("Plaintiff's lawsuit does not seek to merely vindicate an interest in defendant's procedural compliance with the FDCPA; rather, plaintiff's suit is based on her claim that defendant violated her substantive rights under the FDCPA by its conduct and communications regarding plaintiff's debt.").[3]

In contrast, the district court cases that defendant cites are not compelling. (Def.'s Br. at 12-13.) In *Chad & Courtney Provo v. Rady Children's Hospital - San Diego*, No. 15CV00081-JM(BGS), 2016 WL 4625556 (S.D. Cal. Sept. 6, 2016), the court dismissed an FDCPA claim alleging a Section 1692e violation because "the only harm Plaintiffs [pled was] . . . 'undue stress, anxiety, and frustration,'" *id*. at *2, and "Plaintiffs failed to allege an injury that 'actually exist[ed]' and that affected them 'in a personal and individual way,'" *id*. (quoting *Spokeo*, 136 S. Ct. at 1548). The court further found that although "Plaintiffs state[d] in their opposition . . . that unsophisticated debtors may face harm as a result of receiving this sort of letter, they did not plead in the FAC that they themselves suffered this type of harm." *Id*. For the reasons discussed above, *Chad* misapprehends *Spokeo*'s ruling, which was limited to procedural violations, and incorrectly concludes that the plaintiffs were

---

[3] In addition, plaintiff's opposition brief aggregates the extensive and ever-growing array of district court decisions adopting this position. (Pl.'s Resp. Br. Opposing Def.'s Mot. for Dismissal, ECF No. 23, at 24-28.)

required to allege actual harm.[4] In addition, to the extent that *Chad* found a lack of particularity, it is distinguishable as discussed *infra*. Further, in *Jackson v. Abendroth & Russell, P.C.*, No. 416CV00113RGEHCA, 2016 WL 4942074 (S.D. Iowa Sept. 12, 2016), the court found that "bare procedural violations of FDCPA sections 1692g(a) and (b) do not amount to a concrete injury," but "recognize[d] that violations of other FDCPA provisions may be sufficient on their own to constitute an Article III injury in fact." *Id*. at *11 (citing, e.g., *Bernal v. NRA Grp., LLC*, No. 16 C 1904, 2016 WL 4530321, at *4-5 (N.D. Ill. Aug. 30, 2016) (finding alleged violations of section 1692e and section 1692f constitute a concrete injury sufficient for Article III standing)). Accordingly, *Jackson*'s "holding is confined to the context of this case and the disclosure requirements in section 1692g of the FDCPA; it does not express judgment on whether a violation of any other FDCPA provision constitutes an injury in fact sufficient for Article III standing." *Id*. Similarly, this Court's analysis is limited to Section 1692e and offers no view on whether other FDCPA provisions confer substantive statutory rights.

Finally, defendant relies on *Dolan v. Select Portfolio Servicing*, No. 03-CV-3285 PKC AKT, 2016 WL 4099109 (E.D.N.Y. Aug. 2, 2016), to argue that the IRS Language constitutes a technical procedural violation and that *Church* is inconsistent with *Spokeo*. (Def.'s Br. at 8-9; Def.'s Reply Br., ECF No. 24, at 7-9.) However, *Dolan* analyzed standing under a provision of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, and found that the injuries alleged in that case constituted "bare procedural statutory violations" that did not satisfy Article III. *Id*. at *6. On that basis, it is inapposite because, as discussed above, the Court agrees with the weight of post-*Spokeo* authority holding that Section 1692e of the FDCPA, unlike other statutory schemes, creates a substantive right to be free from abusive debt communications.[5] *See Long*, 2016 WL 7179367, at *3 ("While courts have found that violations of other statutes, such as the Cable Communications Policy Act ('CCPA') or FCRA, do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."). Although *Dolan* disagreed with *Church*'s holding in a footnote, finding "that the cases cited in *Spokeo* as examples of intangible harm sufficient to confer standing, *i.e.*, *Akins* and *Public Citizen*, involved interests of much greater and broader significance to the public than those at issue in *Church* and, more relevantly, under Section 2605 of RESPA," *id*. at *6 n.7, this Court is not bound by that *dictum* and respectfully disagrees with *Dolan*'s characterization of

---

[4] Insofar as *Chad* also determined that intangible harms are insufficient to establish Article III injury-in-fact, such a finding is clearly contrary to *Spokeo*, which re-affirmed its precedents *Akins* and *Public Citizens* holding that intangible informational injuries are constitutionally cognizable. *Spokeo*, 136 S. Ct. at 1549-50.

[5] For that reason, defendant's string cite of decisions finding a lack of standing based on procedural violations of other statutes (Def.'s Br. at 10-11, 15-16) is also largely inapposite. The one FDCPA-related decision in that chain, *Tourgeman v. Collins Financial. Services, Inc.*, No. 08-CV-1392 CAB (NLS), 2016 WL 3919633 (S.D. Cal. June 16, 2016), *appeal docketed*, No. 16-56190 (9th Cir. Aug. 19, 2016), found no standing for an alleged Section 1692e violation because the plaintiff never even "received the offending communication" at issue. *Id*. at *2. *Tourgeman* is thus factually dissimilar from the instant case, where there is no dispute that plaintiff received the Letter.

the important rights that Congress sought to protect through the FDCPA.[6] On the contrary, this Court finds that Section 1692e of the FDCPA creates a "new legal interest[] by statute, the invasion of which can support standing . . . ." *Strubel*, 842 F.3d at 188.

In sum, the Court finds that plaintiff has pled a concrete interest for the purpose of Article III standing based on her receipt of the IRS Language in the Letter because a material violation of FDCPA Section 1692e infringes plaintiff's substantive statutory right to be free from abusive debt practices.

### b. Particularity

*Spokeo* also emphasized that Article III's injury-in-fact component requires that an alleged harm be both concrete and particular, and "[f]or an injury to be particularized, it must affect the plaintiff in a personal and individual way." 136 S. Ct. at 1548. In other words, a plaintiff must "sustain a grievance distinct from the body politic, not a grievance unique from that of any identifiable group of persons." *Strubel*, 842 F.3d at 191 n.10 (citing *Sierra Club v. Morton*, 405 U.S. 727, 734-40 (1972)).

Here, defendant contends that plaintiff does not allege that the IRS Language

> affected her personally at all. Instead, and contrary to the recent law of this Circuit, Ms. Bautz asserts that a voluntary disclosure of possible IRS regulation applicability "tends to give erroneous and/or incomplete tax advice to consumers"—not to Ms. Bautz

herself. *Complaint*, ¶ 43. The Complaint also alleges that the Letter "suggests to the least sophisticated consumer that failure to pay will get the consumer into trouble with the IRS." *Id*. at ¶ 44. Therefore, Plaintiff's Complaint suffers from a fundamental lack of particularized injury to confer standing under recent Second Circuit and Supreme Court jurisprudence.

Def.'s Suppl. Letter at 2.

This argument is meritless. Like the plaintiff in *Strubel*, who, with respect to the claims for which the Second Circuit found standing, "sue[d] to vindicate interests particular to her—specifically, access to disclosures of her own obligations," 842 F.3d at 191, plaintiff filed this action based on the Letter, which was addressed to her, stated that she had an outstanding debt of $849.35, and "offer[ed] to settle [her] account for the reduced amount of $467.15. That's a savings of $382.20." (Compl. ¶¶ 22-23; *id*., Ex. A.) Thus, the Letter affected plaintiff "in a personal and individual way, and her suit is not a vehicle for the vindication of the value interests of concerned bystanders or the public at large." *Strubel*, 842 F.3d at 191 (citing *Lujan*, 504 U.S. at 560 n.1, and *Valley Forge Christian Coll.*, 454 U.S. at 473). Insofar as defendant argues that plaintiff's "injury is not particularized because it is not distinct from that sustained by other members of the putative class," that argument is also foreclosed by *Strubel*, which held that "Fed. R. Civ. P. 23(a)(3) conditions class actions on the claims or defenses of representative parties being 'typical of the claims or defenses of the class.'" *Id*. at 191 n.10. Thus, defendant's "urged interpretation of particularized injury would render class actions inherently incompatible with Article III, a conclusion for which it cites no

---

[6] Accordingly, the Court also disagrees with defendant's claim that the IRS language did "not result in an injury comparable to the injury in *Havens* . . . ." (Def.'s Reply Br. at 8-9.)

support in law." *Id.*; *see also Jacobson v. Healthcare Fin. Servs., Inc.,* 516 F.3d 85, 91 (2d Cir. 2008) (noting how the FDCPA "enlists the efforts of sophisticated consumers . . . as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others").[7]

Therefore, for the foregoing reasons, the Court finds that plaintiff has met Article III's injury-in-fact requirement by alleging a concrete and particular harm based on a violation a substantive statutory right.

2. Procedural Violation

Assuming *arguendo* that the IRS Language constitutes a procedural violation of the FDCPA, the Court finds that plaintiff has met the test set forth in *Spokeo* and *Strubel* because she has "demonstrate[d] a sufficient 'risk of real harm' to the underlying interest to establish concrete injury without 'need [to] allege any *additional* harm beyond the one Congress has identified.'" *Strubel*, 842 F.3d at 189 (quoting *Spokeo*, 136 S. Ct. at 1549).

As already discussed, the Court previously concluded that the IRS Language presents a material risk of injury to plaintiff's interests under the FDCPA—freedom from deceptive debt collection practices—because a "belief that tax consequences [would] stem[] from debt forgiveness could potentially impact whether the Plaintiff decides to pay the lesser amount offered, as opposed to the entire debt owed or even some other option," and "[t]he least sophisticated consumer afraid of audit may be pressured by any statement such as one made by the Defendant into paying more of his debt to avoid the risk of triggering an IRS audit." (Tr. of Aug. 31, 2016 Oral Ruling at 6:21-7:1, 7:16-19.) Thus, the plaintiff's complaint parallels the TILA claims for which the Second Circuit found standing in *Strubel* because the requirement that debt collectors "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, is "a core object of the [FDCPA]," *Strubel*, 842 F.3d at 190, which has the purpose of "eliminat[ing] abusive debt collection practices by debt collectors," 15 U.S.C. § 1692(e). Including a materially false, deceptive, or misleading statement in a debt collection communication would, by definition, cause an individual "to lose the very . . . rights that the law affords him." *Strubel*, 842 F.3d at 190. Accordingly, "[h]aving alleged such procedural violations, [plaintiff] was not required to allege 'any *additional* harm' to demonstrate the concrete injury necessary for standing," *id.* at 191 (quoting *Spokeo*, 136 S. Ct. at 1549), and, as noted *supra*, defendant is therefore incorrect to claim that plaintiff has not alleged a concrete injury because she

---

[7] Defendant also argues that the alleged FDCPA violation at issue was procedural because it included the IRS Language in the Letter pursuant to bulletins issued by the Consumer Financial Protection Bureau ("CFPB"). Defendant claims that "CFPB Bulletins 2013-07 and 2013-08 state that debt collectors may not misrepresent the consequences and circumstances of forgiveness of debt, may not misrepresent the consequences and circumstances of forgiveness of debt and must take steps to ensure that any claims that they make about the effect of paying debts are not deceptive." (Def.'s Br. at 18.) However, those bulletins do not impose a mandatory requirement on defendant to disclose the possible tax consequences of repaying a debt, and defendant's decision to include the IRS Language in the Letter was thus volitional and not pursuant to a procedural obligation. *Cf. Strubel*, 842 F.3d at 186-87 (discussing codified CFPB regulations delineating procedural requirements under TILA). Indeed, defendant characterized the IRS Language in its brief and at oral argument as a "voluntary disclosure." (Def.'s Br. at 1.)

failed to identify "any actual damages" stemming from the IRS Language (Def.'s Br. at 8, 13-14).

Further, plaintiff's claim is distinct from those in *Strubel* that lacked standing. Unlike the automatic payment plan challenge—where it was "undisputed that [the defendant] did not offer an automatic payment plan at the time Strubel held the credit card at issue," 842 F.3d at 191—there is no such factual gap here because defendant does not assert that plaintiff failed to receive the Letter. Similarly, plaintiff has showed that defendant "failed to honor its statutory response obligations to consumers" by alleging that ARS included a false, deceptive, or misleading statement in the Letter, and thus plaintiff's claim is also dissimilar from the billing error challenge in *Strubel*. *Id.* at 194 (footnote omitted).

Accordingly, plaintiff has adequately pled a violation of the FDCPA that poses a "material risk of harm" to her statutory interests and has, thus, satisfied the injury-in-fact requirement of Article III.[8]

### IV. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for lack of subject matter jurisdiction (ECF No. 22) is denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 23, 2016
       Central Islip, NY

\*\*\*

Plaintiff is represented by Gus Michael Farinella and Ryan L. Gentile of the Law Offices of Gus Michael Farinella P.C., 110 Jericho Turnpike, Suite 100, Floral Park, New York 11001. Defendant is represented by Peter G. Siachos and Yevgeny Roymisher of Gordon & Rees LLP, 90 Broad Street, 23rd Floor, New York, New York 10004.

---

[8] As discussed *supra*, the Court also finds this injury to be sufficiently particular.